UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTINA E. BURDO,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | NO. C13-763-JCC-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Christina E. Burdo appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded for further proceedings.

### I.　　FACTS AND PROCEDURAL HISTORY

Plaintiff is a 53-year-old woman with a high school education. Administrative Record ("AR") at 167, 194. Her past work experience includes employment as a secretary and retail sales clerk. AR at 181. Plaintiff was last gainfully employed in 2008. *Id.*

REPORT AND RECOMMENDATION - 1

In July 2010, Plaintiff filed applications for SSI and DIB, alleging an onset date of December 1, 2008.  AR at 167-84.  Plaintiff asserts that she is disabled due to post-traumatic stress disorder, bipolar disorder, depression, and anxiety.  AR at 193.

The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 70-85, 88-99.  Plaintiff requested a hearing, which took place on December 20, 2011.  AR at 37-65.  On February 7, 2012, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that Plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 12-25.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On April 30, 2013, Plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 1.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

REPORT AND RECOMMENDATION - 2

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Burdo bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the

REPORT AND RECOMMENDATION - 3

national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On February 7, 2012, the ALJ found:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2012.

2. The claimant has not engaged in substantial gainful activity since December 1, 2008, the alleged onset date.

3. The claimant's affective disorder, anxiety-related disorder, and polysubstance dependence are severe impairments.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The claimant has the RFC to perform a full range of work at all exertional levels, but is limited to performing no more than simple repetitive tasks that involve no contact with the public, and no more than occasional contact with supervisors and coworkers. She will also have an average of six unscheduled absences per year from work and will be off task at work up to eight percent of the time.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1960 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[2]

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 5

    8.       The claimant has at least a high school education and is able to communicate in English.

    9.       Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

    10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

    11.     The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2008, through the date of the decision.

AR at 14-24.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ properly assessed Plaintiff's credibility;

2. Whether the ALJ properly considered the opinion of Victoria McDuffee, Ph.D.; and

2. Whether the ALJ erred in assessing Plaintiff's RFC.

Dkt. 14 at 1.

## VII.    DISCUSSION

A.    <u>The ALJ Did Not Err in Discounting Plaintiff's Credibility.</u>

The ALJ provided two reasons to discount Plaintiff's credibility, specifically her failure to seek counseling on an ongoing basis, and her improvement when compliant with treatment recommendations. AR at 19-21. Plaintiff argues that neither of these reasons is clear and convincing, and thus the ALJ erred in discounting her credibility. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (holding that in the absence of affirmative evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony).

REPORT AND RECOMMENDATION - 6

As evidence to support his first reason — sporadic counseling — the ALJ cited the gap in Plaintiff's counseling sessions between February 2008 and June 2009, between June 2009 and October 2009, between October 2009 and January 2010, and between August 2010 and January 2011.  AR at 19 (citing AR at 236, 261, 282, 326, 328, 596, 602).  According to the ALJ, those gaps in treatment undermine the credibility of her testimony regarding severe mental-health symptoms.  *See* Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *7 (Jul. 2, 1996) ("[A claimant's] statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints[.]").  This inference is not reasonable under the particular circumstances of this case, because Plaintiff testified at the hearing that initially she did not recognize her need for counseling:

> [At] first I didn't understand that I actually have a disease like the depression and so I just took all the – you know, I just felt guilty.  Why couldn't I make myself perform better?  And I think [counseling] is helping because I have one place where they know everything about me and when I got sick they were there so they know me.

AR at 44.  Although an unexplained failure to seek treatment *can* undermine a claimant's credibility, Plaintiff's explanation indicates that her initial reluctance to pursue treatment was based on her lack of insight rather than her lack of severe symptoms.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (indicating that an ALJ may properly consider a claimant's unexplained or inadequately explained failure to seek treatment when assessing credibility).

But the ALJ's other reason for discounting Plaintiff's credibility withstands scrutiny: he summarized the evidence showing that Plaintiff's symptoms improved when she complied with her treatment recommendations, and that her symptoms were exacerbated[3] when not

---

[3] The parties place undue emphasis on the ALJ's reference to Plaintiff's "situational stressors" in March 2011.  *See* AR at 21.  The ALJ's primary inference from the March 2011

REPORT AND RECOMMENDATION - 7

compliant and/or when relapsing with substance abuse. AR at 19-21 (citing AR at 324-28, 331-333, 340, 403-04, 406, 410, 413, 452, 480, 501-02, 523, 526, 550-51, 608). The ALJ was entitled to infer from this evidence that Plaintiff's symptoms are not as disabling as alleged, because they improved during periods where she was compliant with treatment and sobriety. *See, e.g.*, *Korenica v. Astrue*, 346 Fed. Appx. 141, 142 (9th Cir. 2009) (finding that the ALJ's reasoning clear and convincing that a claimant's testimony was not entirely credible due to his improvement "with proper treatment and medication"). Accordingly, because the ALJ provided a clear and convincing reason to discount Plaintiff's credibility, the ALJ's adverse credibility determination should be affirmed.

B.      The ALJ Erred in Discounting Dr. McDuffee's Opinions.

Consultative examiner Dr. McDuffee provided two opinions regarding Plaintiff's functioning, in April 2009 and July 2011. AR at 306-12, 425-35. The ALJ assigned significant weight to Dr. McDuffee's opinions regarding Plaintiff's cognitive functioning, but found that her opinions regarding severe impairment as to social functioning were inconsistent with the record. AR at 22. According to Plaintiff, the ALJ's reasons to discount part of Dr. McDuffee's opinion were insufficient. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (holding that an ALJ must provide specific and legitimate reasons to discount a contradicted medical opinion).

The ALJ first noted how Dr. McDuffee's April 2009 opinion indicated that Plaintiff's moods were unstable, despite treatment notes indicating that her mental health symptoms were

---

hospitalization was that that it was preceded by a failure to take medication and abuse of marijuana and cocaine; the ALJ noted that Plaintiff's father had recently died as a potential secondary explanation for the exacerbation. *Id.* Although the parties discuss whether symptoms caused by a situational stressor can be caused by a medically determinable impairment (Dkt. 15 at 14-15; Dkt. 16 at 4-5), Plaintiff has not assigned error to the ALJ's step-two findings and instead focuses on the ALJ's adverse credibility determination, which mentions situational stressors only in passing.

REPORT AND RECOMMENDATION - 8

stable. AR at 22. The evidence cited by the ALJ, from December 2010 and May 2011 (AR at 403, 488, 490), indicates that Plaintiff's mood was stable on two particular dates, but does not account for the entirety of Plaintiff's treatment notes, which, as the ALJ himself summarized at another point in the decision, indicate that her mood was unstable on a number of occasions spanning months. *See* AR at 15-17 (citing AR at 450, 452-53, 456-57, 465, 478-85, 520, 523, 526, 578, 596, 602). The ALJ's finding that Dr. McDuffee's opinion regarding Plaintiff's unstable moods is inconsistent with the record is, therefore, not supported by substantial evidence.

Furthermore, although the ALJ found that other portions of Dr. McDuffee's opinions were inconsistent with her own findings or with other evidence of record, the ALJ's reasoning is not legitimate. For example, the ALJ cited evidence showing that Plaintiff can attend medical appointments and cooperate with providers, and claimed that this was inconsistent with Dr. McDuffee's opinions regarding Plaintiff's social limitations — but fails to explain how an ability to cooperate with treatment providers equates to a capability to communicate with co-workers and supervisors. AR at 22. The ALJ also cited "counseling notes" that he claimed proved that Plaintiff had "improvement with her symptoms during the time of Dr. McDuffee's July 2011 examination" (AR at 22 (citing AR at 550)), but the evidence cited is treatment notes from a psychiatric evaluation, showing that Plaintiff needed more medication management and looking for more support to maintain sobriety. Plaintiff missed most of her counseling appointments during the weeks before and after Dr. McDuffee's evaluation. *See* AR at 542-48, 554-55.

Finally, the ALJ discounted Dr. McDuffee's opinions regarding Plaintiff's limitations in awareness of normal hazards due to lack of insight and poor judgment, in light of her finding on mental status examination that Plaintiff has fair insight and judgment. AR at 22

REPORT AND RECOMMENDATION - 9

(referencing AR at 426-28). Other portions of Dr. McDuffee's opinion illuminate the basis of her opinion, however: Dr. McDuffee indicated that Plaintiff's mania causes poor judgment, a lack of insight, and impaired decision-making (AR at 426), and that although Plaintiff has been receiving mental-health treatment,[4] she nonetheless continues to have periods of decompensation (AR at 428). Thus, Dr. McDuffee's opinion as a whole indicates that Plaintiff's limitations as to judgment and insight are caused by mania, and that Plaintiff was not currently experiencing a manic episode at the time of the evaluation. Thus, Dr. McDuffee's mental status examination findings are not particularly relevant to her opinions regarding manic symptoms.

Because none of the ALJ's reasons to discount Dr. McDuffee's opinions are legitimate, the ALJ erred. Because it is not clear that Plaintiff would be deemed disabled even if Dr. McDuffee's opinions were credited, however, the ALJ should have an opportunity to reconsider the opinions on remand.

C.  <u>The ALJ Shall Reconsider His RFC Assessment on Remand.</u>

Plaintiff challenges two aspects of the ALJ's RFC assessment. First, Plaintiff argues that the ALJ erred in "prematurely seeking to discount the effects of substance abuse on her functioning," without first considering her functioning *with* continued substance abuse. Dkt. 14 at 7. Second, Plaintiff challenges the ALJ's finding that Plaintiff will have "an average of six unscheduled absences per year from work and will be off task at work up to eight percent of the time." AR at 18. The ALJ did not cite or discuss any evidence that supports this finding, and Plaintiff contends that it is not supported by substantial evidence in the record.

//

---

[4] Dr. McDuffee also indicated that Plaintiff is *not* receiving mental health services, but the ALJ did not address this inconsistency. AR at 28.

1. *DAA Analysis*

A claimant is not entitled to disability benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Therefore, where relevant, an ALJ must conduct a drug abuse and alcoholism ("DAA") analysis and determine whether a claimant's disabling limitations remain absent the use of drugs or alcohol. 20 C.F.R. §§ 404.1535, 416.935. That is, the ALJ must first identify disability under the five-step procedure, and then conduct a DAA analysis to determine whether substance abuse was material to disability. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). "If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." *Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir. 2007).

In this case, the ALJ found that Plaintiff's polysubstance dependence was a severe impairment at step two, but he did not specifically analyze the materiality of Plaintiff's substance abuse to the disability inquiry before analyzing her limitations when sober. The Commissioner argues that any error resulting from the ALJ's failure to perform a two-step DAA analysis is harmless, because the ALJ's analysis as written indicates that when Plaintiff is sober, her limitations are not disabling, and therefore requiring the ALJ to separating out the effects of Plaintiff's substance abuse as required by *Bustamante* could not change the outcome of the decision. Dkt. 15 at 16-17. The Court agrees with the Commissioner that it is not entirely clear if or how a full two-step DAA analysis would alter the ALJ's analysis, but because this case should be remanded for reconsideration of Dr. McDuffee's opinion, the ALJ is also instructed to complete a full DAA analysis on remand.

REPORT AND RECOMMENDATION - 11

### 2. "Speculative" Findings

The Commissioner essentially concedes that the ALJ's findings regarding Plaintiff's absences and time off-task are not supported by any particular evidence, but argues that this error is harmless because "Plaintiff cannot show that she was prejudiced by the ALJ's inclusion of more restrictive limitations than those established by the evidence." Dkt. 15 at 23. It is unclear how the ALJ's findings as to absences or time off-task could be characterized as "more restrictive" than those established by the evidence, because neither the ALJ nor the Commissioner cited credited evidence establishing the amount of time that Plaintiff could be expected to be absent or off-task. On remand, the ALJ shall reconsider his findings regarding the time Plaintiff is expected to be absent or off-task in light of all the evidence of record rather than speculation.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 23rd day of October, 2013.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

\

REPORT AND RECOMMENDATION - 12